A10A0061. PARKS v. THE STATE.
(695 SE2d 704)

MILLER, Chief Judge.

A jury convicted William L. Parks, Jr., of single counts each of cruelty to children in the second degree (OCGA § 16-5-70 (c)), terroristic threats (OCGA § 16-11-37) and criminal trespass (OCGA § 16-7-21).[1] Parks filed a motion for new trial, which the trial court denied. Parks appeals, arguing that (i) the trial court erred in admitting prejudicial photographs; (ii) the evidence was insufficient to support his convictions; (iii) the trial court erred in giving and refusing to give certain jury instructions; (iv) the trial court erred in considering his prior uncounseled guilty pleas in aggravation of

---

[3] The record does not contain a proposed motion for appointment of counsel.

[1] Parks was charged in the indictment with aggravated assault, cruelty to children in the first degree, terroristic threats, and burglary. The trial court thereafter entered a nolle prosequi order on the aggravated assault charge.

punishment; and (v) trial counsel was ineffective. Finding no error, we affirm.

Viewed in the light most favorable to the jury's verdict (*Smith v. State*, 269 Ga. App. 17 (1) (602 SE2d 921) (2004)), the record shows that on the evening of December 15, 2007, Emily Hood and her 12-year-old son, C. W., were having dinner at the home of her friends, Floyd and Carla Musselwhite. After dinner, C. W. walked outside to the front porch, where he observed Parks, his mother's former boyfriend, approaching. C. W. went back inside, and told his mother that Parks was coming toward the house. When Hood went outside, she observed Parks to be very intoxicated and told him to calm down and go home, but Parks ripped her shirt open and struck her in the face. Floyd told Parks to leave his house. Parks ignored the warning and broke the window in the door, reaching through the window with his hand to unlock the door despite Floyd, Carla and Hood's efforts to shut it. Parks then attempted to drag Hood from the house by her hair, telling her that he was going to kill her. Carla grabbed Hood's arm to pull her inside the house and told Parks to leave. Parks struck Carla in the face and shoved her, knocking her to the floor. When Floyd came to the aid of his wife, Parks hit Floyd in the head. Frightened, C. W. climbed out of a window to get away from Parks. Parks broke another window with a metal pipe, climbed out of it, and chased C. W. with the pipe. Parks screamed, "I'm fixing to kill you[,]" and struck C. W. in the back with the pipe. When Parks finally left the house, he threatened to come back and "kill everybody in this house."

1. Parks argues that the trial court erred in admitting photographs of injuries to Floyd's right arm because he did not cause such injuries. We disagree.

"The admission or exclusion of evidence which is objected to on the ground of relevancy lies within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent a clear abuse of discretion." (Citation and punctuation omitted.) *Phillips v. State*, 269 Ga. App. 619, 624 (4) (604 SE2d 520) (2004).

At trial, the State introduced photographs of bruises to Floyd's arm, to which Parks objected on relevancy grounds, arguing that there was no evidence he caused the bruises and he was not charged with injuring Floyd. The State argued that the photographs were admissible as part of the res gestae, and were therefore relevant to show Parks' intoxication and motivation for his unlawful entry into the Musselwhites' home. We have held that

> [t]he (s)urrounding circumstances constituting part of the res gestae may always be shown to the jury along with the principal fact, and their admissibility is within the discre-

tion of the trial court. Hence, acts and circumstances forming a part or continuation of the main transaction are admissible as res gestae(,) and it does not matter that the act is another criminal offense and does not tend to establish the main offense.

(Citation omitted.) *Gumbs v. State*, 258 Ga. App. 230, 231 (2) (573 SE2d 485) (2002). Here, Floyd testified that during the incident, his arms were bruised but was uncertain how he received the injuries. Thus, the trial court did not abuse its discretion in admitting the photographs as part of the res gestae. Id.; *Phillips*, supra, 269 Ga. App. at 624 (4).

2. Parks argues that the evidence was insufficient to support his convictions. We are not persuaded.

(a) Cruelty to children in the second degree.

The indictment charged Parks with cruelty to children in the first degree for "chasing [C. W.] with a metal rod[, and] threatening to hit the child with said rod," and Parks ultimately was convicted of cruelty to children in the second degree, as a lesser included offense. Cruelty to children in the second degree is committed when a person "with criminal negligence causes a child under the age of 18 cruel or excessive physical or mental pain." OCGA § 16-5-70 (c).

Given Parks' conduct, as above, in chasing C. W. with a metal pipe, his threat to kill C. W., and assault and battery upon C. W. with the pipe, the jury was authorized to conclude that Parks acted with a wanton and reckless disregard for the safety of C. W., who was, in fact, injured by Parks' actions. See OCGA §§ 16-2-1 (b) (criminal negligence is defined as "an act or failure to act which demonstrates a willful, wanton, or reckless disregard for the safety of others who might reasonably be expected to be injured thereby"); 16-2-6 (the trier of fact may find criminal intention based "upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted"). Further, C. W. testified that when Parks chased him with the pipe and threatened to kill him, he was crying and shaking, fearful that he was going to die. The foregoing evidence was sufficient to support Parks' conviction of cruelty to children in the second degree beyond a reasonable doubt. OCGA § 16-5-70 (c). Although some evidence showed that Parks mistakenly believed that the occupants of the house were engaged in drug activity in C. W.'s presence, even if Parks held this mistaken belief, this would not justify his conduct of chasing C. W. with a pipe. See *Taylor v. State*, 272 Ga. 744, 746 (1) (534 SE2d 67) (2000) (defendant's mistaken impression about the purpose of his intrusion into the victim's house "did not justify breaking into the victim's house and attempting to rob its inhabit-

178

ants") (citation omitted); OCGA § 16-3-5 ("A person shall not be found guilty of a crime if the act . . . constituting the crime was induced by a misapprehension of fact which, if true, would have justified the act. . . .").

(b) Terroristic threats.

Parks contends that the evidence was insufficient to show that he intended to terrorize anyone because he mistakenly believed that the occupants of the house were engaged in drug activity in the presence of a minor. We disagree.

The indictment charged Parks with the offense of terroristic threats in that he "did threaten to commit murder[,] a crime of violence, by telling Mr. and Mrs. Floyd Musselwhite and [C. W.] that he would kill them, with reckless disregard of the risk of causing such terror[.] . . ." A person commits the offense of terroristic threats when "he . . . threatens to commit any crime of violence . . . with the purpose of terrorizing another." OCGA § 16-11-37 (a). Here, the undisputed evidence showed that Parks threatened to kill C. W. and Hood, as well as all the occupants in the house. This evidence was more than sufficient to support Parks' conviction of terroristic threats beyond a reasonable doubt. See *Reeves v. State*, 288 Ga. App. 544, 545 (654 SE2d 449) (2007) (defendant's statement to his spouse that he would kill her when he got out of jail was sufficient to support his conviction for terroristic threats). Although Parks contends that he was simply trying to get Hood out of the house because he believed the occupants were engaged in drug activity, his misapprehension did not justify his threat to kill C. W. and the Musselwhites. See OCGA § 16-3-5.

(c) Criminal trespass.

OCGA § 16-7-21 (b) provides that

> [a] person commits the offense of criminal trespass when he . . . knowingly and without authority: . . . (2) Enters upon the land or premises of another person . . . after receiving, prior to such entry, notice from the owner . . . that such entry is forbidden; or (3) Remains upon the land or premises of another person . . . after receiving notice from the owner . . . to depart.

Here, the evidence showed that Floyd advised Parks to leave when Parks approached his house, yet Parks ignored the warning. When Parks attempted to drag Hood from the house against her will, Carla told him to leave, but he remained. The foregoing evidence sufficed to convict Parks of criminal trespass beyond a reasonable doubt. OCGA § 16-7-21 (b) (2) and (3); see also *In the Interest of R. C.*, 289 Ga. App. 293, 294 (2) (b) (656 SE2d 914) (2008) (evidence

that juvenile came on school property after being advised that he was prohibited from doing so was sufficient to support his adjudication of criminal trespass).

3. Parks argues that the trial court erred in (i) failing to give his requested jury charge on accident and (ii) giving an erroneous jury instruction on reasonable doubt. We are not persuaded.

(a) Accident. Parks contends that the trial court erred in refusing to give his requested charge on accident because the evidence shows that if he struck C. W. with a pipe, he did so accidentally. This claim lacks merit.

"When the charge sought is confusing, inappropriate, or not authorized by the evidence, the trial court does not err in denying the requested instruction." (Citation omitted.) *Wicker v. State*, 285 Ga. App. 294 (645 SE2d 712) (2007).

OCGA § 16-2-2 provides that "[a] person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence." Given that Parks did not testify at trial or call any witnesses, no evidence supports his contention that he accidentally struck C. W. with a pipe. See *Davis v. State*, 269 Ga. 276, 279 (3) (496 SE2d 699) (1998) (in order to raise accident as an affirmative defense, "a defendant must establish that [he] acted without criminal intent and was not engaged in a criminal scheme, and that [his] actions did not show 'an utter disregard for the safety of others who might reasonably be expected to be injured thereby' ") (citation and punctuation omitted). Further, we cannot conceive that Parks' act of chasing C. W. with a pipe did not demonstrate an utter disregard for C. W.'s safety. Consequently, the trial court did not err in refusing to give Parks' requested charge on accident. *Wicker*, supra, 285 Ga. App. at 294.

(b) Reasonable doubt. Parks argues that the trial court erred in instructing the jury as follows: "After giving consideration to all the facts and circumstances of this case if your minds are wavering, unsettled, or unsatisfied, then that is a doubt of the law and you should acquit the defendant." Parks contends that the trial court should have used the phrase "must acquit," rather than "should acquit," and that the instruction as given was ambiguous and shifted the burden to him. We disagree.

"In reviewing an allegedly erroneous jury instruction, we apply the 'plain legal error' standard of review." (Citation, punctuation and footnote omitted.) *White v. State*, 291 Ga. App. 249, 251 (661 SE2d 865) (2008).

Here, we find no error because the trial court gave the pattern charge on presumption of innocence, burden of proof, and reasonable doubt. Further, "[w]e have previously considered and rejected the

argument that 'must acquit' not 'should acquit' is the required language" to use when describing the jury's role should they find reasonable doubt because "the words 'should acquit' are the language of command." (Citation, punctuation and footnotes omitted.) *Martin v. State*, 300 Ga. App. 39, 41 (3) (684 SE2d 111) (2009). See also *Lynn v. State*, 251 Ga. App. 155, 156 (1) (a) (553 SE2d 836) (2001).

4. Parks contends that the trial court erred in considering his prior uncounseled guilty pleas in aggravation of punishment. Again, we disagree.

During the sentencing hearing, Parks' trial counsel objected to the trial court's consideration of Parks' uncounseled guilty pleas in aggravation of punishment: a 1989 plea of guilty to burglary and his 1992 guilty pleas for misdemeanor theft by shoplifting and felony obstruction of an officer. Nothing in the trial court's oral ruling at the sentencing hearing, however, indicates that it considered the foregoing guilty pleas in fixing the length of Parks' sentence. Parks' appellate counsel conceded during the new trial hearing that the record was silent as to whether the trial court considered Parks' convictions entered upon the uncounseled guilty pleas, as above, and otherwise failed to affirmatively produce any evidence to demonstrate error in this regard. Thus, this claim lacks merit.

5. Parks argues that trial counsel was ineffective in (i) withdrawing his request to charge on the lesser included offense of cruelty to children in the third degree and (ii) failing to discover and impeach Hood with her prior conviction for misdemeanor theft by taking. We reject these arguments.

On a claim of ineffective assistance of counsel, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Footnote omitted.) *Suggs v. State*, 272 Ga. 85, 87 (4) (526 SE2d 347) (2000). "In order to succeed on a claim of ineffective assistance of counsel, appellant must show that counsel's performance was deficient and that, but for the deficient performance, there is a reasonable probability the outcome of the trial would have been different." (Citations omitted.) *Martin v. State*, 281 Ga. 778, 780 (3) (642 SE2d 837) (2007).

(a) Cruelty to children in the third degree.

> [A] person commits the offense of cruelty to children in the third degree when: (1) Such person, who is the primary aggressor, intentionally allows a child under the age of 18 to witness the commission of a forcible felony [or] battery . . . or (2) Such person, who is the primary aggressor, having

knowledge that a child under the age of 18 is present and sees or hears the act, commits a forcible felony . . . or battery.

OCGA § 16-5-70 (d). Here, the evidence did not support a charge on cruelty to children in the third degree because the evidence showed that C. W. was the victim of Parks' act of "chasing [C. W.] with a metal rod[, and] threatening to hit the child with said rod," as alleged in the indictment, rather than a mere witness. Thus, trial counsel's withdrawal of the lesser included offense of cruelty to children in the third degree was not deficient. *Martin*, supra, 281 Ga. at 780 (3).

(b) Hood's prior conviction of misdemeanor theft by taking.

Parks contends that his trial counsel was ineffective in failing to discover and impeach Hood with her prior conviction for misdemeanor theft by taking. We are not persuaded.

During the motion for new trial hearing, Parks introduced into evidence a certified copy of Hood's conviction for misdemeanor theft by taking and submitted the affidavit of his trial counsel, who stated that his failure to find, obtain certified copies of, or utilize Hood's prior convictions was not strategic. Despite this evidence, Parks failed to show that Hood's conviction for theft by taking involved fraud or deceit and that such conviction would have been admitted for impeachment purposes. See *McClain v. State*, 301 Ga. App. 844, 848-849 (2) (689 SE2d 126) (2010) (although defendant introduced certified copies of a witness' conviction for misdemeanor theft at motion for new trial hearing, he made no effort to show that such crime involved fraud or deceit; thus, defendant failed to show that his trial counsel was deficient for not offering the conviction as impeachment evidence at trial). As such, Parks has failed to show that his trial counsel performed deficiently. *Martin*, supra, 281 Ga. at 780 (3).

*Judgment affirmed. Phipps, P. J., and Johnson, J., concur.*

DECIDED MAY 25, 2010.

*John G. Edwards*, for appellant.
*Denise D. Fachini, District Attorney, Barbara A. Becraft, Henry O. Jones III, Assistant District Attorneys*, for appellee.